IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**BEN O. TURNAGE**                                                                                 **PLAINTIFF**

**VS.**                                         **CIVIL ACTION NO. 3:15-cv-264 HTW-LRA**

**HEALTHCARE FINANCIAL SERVICES, LLC;**
**BAPTIST MEDICAL CENTER a/k/a MISSISSIPPI**
**BAPTIST HEALTH SYSTEMS INC., HORIZON**
**BILLING SERVICES; AND UNKNOWN DEFENDANTS 1-5**        **DEFENDANTS**

**DEFENDANTS' MEMORANDUM IN SUPPORT OF**
**MOTION TO ENFORCE SETTLEMENT**

Defendants herein, Miss. Baptist Health Systems, Inc. ("MBHS"), Horizon Billing Services ("HBS") and Healthcare Financial Services, LLC, ("HFS"); (hereinafter collectively "Defendants"), submit this Memorandum in Support of their Motion [#42] to Enforce Settlement.

**PROCEDURAL BACKGROUND AND RELEVANT FACTS**

Despite the fact that this case was settled on June 9, 2016 at a settlement conference presided over by Senior United States Magistrate John M. Roper and attended by representatives of all Parties and their respective counsel of record, the Plaintiff, Ben O. Turnage has chronically and obstinately refused to execute and deliver the settlement documents agreed to and approved by his attorneys on or about August 16, 2016. The terms and conditions of the settlement were made a matter of record by Judge Roper in an audio recording made prior to the conclusion of the settlement conference. On June 21, 2016, this Court entered a customary Order [41] dismissing the Complaint, with prejudice, but retaining jurisdiction to enforce the settlement.

On July 11, August 2, August 8, and August 31 demand was made upon Plaintiff's counsel to return the executed settlement documents in order to close the agreed settlement. Receiving no reply to these demands except as set forth above, counsel for Defendants sent a final demand to Mr. Heilman requesting delivery of the settlement documents by the close of business on September 30, 2016. *Id.* Plaintiff has not returned the executed settlement documents. Defendants have, at all relevant times,

been ready, willing and able to conclude the settlement and fulfill their obligations under the terms agreed upon. This Court retains jurisdiction to enforce the settlement.

The Defendants jointly request the Court to compensate them for the unnecessary extra attorney's fees and expenses incurred by Defendants since July 11, 2016 when the undersigned confirmed the modified form of the settlement documents to Plaintiff's counsel, to which no subsequent objections have been raised. Defendants jointly request the Court to enter an order compelling the Plaintiff to deliver an executed and acknowledged version of the release in the form agreed to by opposing counsel by a date certain and order to close the settlement previously agreed to by the Parties.

Defendants further move the Court for an award of their reasonable attorneys' fee incurred for all time spent subsequent to the approval of the form of the settlement documents by Plaintiff's counsel, including the time spent to draft this Memorandum and its related Motion, as detailed in the attached Declaration under Penalty of Perjury by William V. Westbrook, III.

## ARGUMENT

### 1.   Applicable standards to enforce settlement agreements.

"[A] district court has inherent power to recognize, encourage, and when necessary enforce settlement agreements reached by the parties. *Bell v. Schexnayder*, 36 F.3d 447, 449 (5th Cir. 1994). The Fifth Circuit "review[s] a district court's exercise of this inherent power, absent any challenge to the underlying settlement, 'for abuse of discretion.'" *In re DEEPWATER HORIZON*, 786 F.3d 344, 354 (5th Cir. 2015); *Lake Eugenie Land & Dev., Inc. v. BP Expl. & Prod. (In re Deepwater Horizon)*, 643 F. App'x 377, 380-81 (5th Cir. 2016). Similarly, the Fifth Circuit "review[s] the imposition of sanctions [under a court's inherent power] for an abuse of discretion." *Chaves v. M/V Medina Star*, 47 F.3d 153, 156 (5th Cir. 1995). "A district court abuses its discretion if it: (1) relies on clearly erroneous factual findings; (2) relies on erroneous conclusions of law; or (3) misapplies the law to the facts." *Harmon v. Journal Pub. Co.*, 476 F. App'x 756, 757 (5th Cir. 2012) (per curiam) (unpublished)

2

(citation omitted). Any questions regarding the interpretation of a settlement agreement are reviewed *de novo* as questions of law. *Waterfowl Ltd. Liab. Co. v. United States*, 473 F.3d 135, 141 (5th Cir. 2006).

### 2. This Court retains jurisdiction to enforce the settlement.

This Court retains jurisdiction to enforce the settlement Order [41] dismissing the Complaint, with prejudice, because it expressly retained jurisdiction to enforce the settlement. See, *Venable v. La. Workers' Comp. Corp.*, 740 F.3d 937, 945 (5th Cir. 2013).

### 3.     The standard for enforcing settlement agreements.

The standard for enforcing a settlement is well established:

> Federal law determines whether a settlement agreement is valid 'where the substantive rights and liabilities of the parties derive from federal law.' *Mid-South Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 389 (5th Cir. 1984). Under federal law, settlement agreements are contracts. *Guidry v. Halliburton Geophysical Services, Inc.*, 976 F.2d 938, 940 (5th Cir. 1992). A binding settlement agreement exists where there is a manifestation of mutual assent, usually in the form of an offer and an acceptance. See *Courtney v. Andersen*, 264 F. App'x 426, 430 (5th Cir. Feb. 1, 2008); *Lopez v. Kempthorne*, 2010 U.S. Dist. LEXIS 118749, 2010 WL 4639046, *4 (S.D. Tex. Nov. 5, 2010) (citing *Triche v. Louisiana Ins. Guaranty Ass'n*, 2010 U.S. Dist. LEXIS 20123, 2010 WL 891000, *5 (E.D. La. Mar. 5, 2010); *Turner Marine Fleeting, Inc. v. Quality Fab and Mechanical, Inc.*, 2002 U.S. Dist. LEXIS 24258, 2002 WL 31819199, *4 (E.D. La. Dec. 13, 2002)). 'If a party to a [federal] suit who has previously authorized a settlement changes his mind when presented with the settlement documents, that party remains bound by the terms of the agreement.' *Fulgence v. J. Ray McDermott & Co.*, 662 F.2d 1207, 1209 (5th Cir. 1981). Where, as here, the plaintiff is represented throughout the settlement negotiations by her attorney of choice, the settlement agreement is presumptively informed, willing, and valid. See *Baptist v. City of Kankakee*, 481 F.3d 485, 488, 490 (7th Cir. 2007); see also *Link v. Wabash RR Co.*, 370 U.S. 626, 634, 82 S. Ct. 1386, 8 L. Ed. 2d 734 (1962) (noting that a plaintiff who chooses an attorney to represent him cannot avoid the consequences of the acts of that attorney). An attorney of record is 'presumed to have authority to compromise and settle litigation of his client.' *Mid-South Towing*, 733 F.2d at 390 (citations omitted).

*McCardell v. Verizon Wireless Tex., LLC,* 2011 U.S. Dist. LEXIS 21839, at *4-6 (S.D. Tex. Mar. 4, 2011).

### 4.     The Settlement Agreement is binding on the parties.

Federal law determines whether the Settlement Agreement with Mr. Turnage is valid because the substantive rights and liabilities of the parties derive from federal law, namely the Fair Debt Collection

Practices Act and the Fair Credit Reporting Act which both invoked by Mr. Turnage's complaint [#3-2]. That Settlement Agreement recorded by Judge Roper at the conclusion of the settlement conference is a contract. That contract is binding on Mr. Turnage because he was present at the settlement conference, participated in the negotiations with the assistance of his chosen attorneys of record and voiced his mutual consent and acceptance of Defendants' joint offer of settlement. Mr. Turnage is party to this federal suit who has previously authorized a settlement. Regardless of whether he changed his mind after being presented with the settlement documents, he remains bound by the terms of the agreement. He was represented throughout the settlement negotiations by his attorneys of choice, so the Settlement Agreement is presumptively informed, willing, and valid.  Accordingly, all of the elements of a valid and enforceable settlement are present.

This Court also has the inherent power to sanction the Plaintiff for obstinately refusing to consummate the settlement:

> Within its 'inherent powers,' a district court has 'the ability to fashion an appropriate sanction for conduct which abuses the judicial process.' *Chambers [v. NASCO, Inc.*], 501 U.S. 32, 43-44 [(1991)]. 'Because of their very potency, inherent powers must be exercised with restraint and discretion.' *Id.* at 44. Accordingly, when 'invoking its inherent power' to sanction, a district court 'must comply with the mandates of due process.' *Id.* at 50. And we have noted that sanctions under a district court's inherent powers generally require a finding of 'bad faith' by the district court. *In re Sealed Appellant*, 194 F.3d 666, 671 (5th Cir. 1999). But 'specific findings [of bad faith] are unnecessary to understand the misconduct giving rise to [a] sanction,' '[w]hen bad faith is patent from the record' and 'may be inferred.' *Id.*

*Lake Eugenie Land & Dev., Inc.*, 643 F. App'x 383 (affirming clawback motion to recover fraudulently procured settlement proceeds).

The Order of Dismissal [#41] plainly states in pertinent part:

> If any party fails to consummate the settlement within THIRTY (30) DAYS, any aggrieved party may reopen the case for enforcement of the settlement agreement, and, if successful all additional attorney's fees and costs from the date of this order shall be awarded such agreed party or parties against the party failing to consummate the settlement.

[#41]

Opposing counsel agreed to the form of settlement documents on July 11, 2016, which was

4

less than thirty (30) days after the entry of the Order [#41]. Mr. Westbrook's DUPP itemizes the time attempting to close this settlement from and after the date of that Order. The Defendants jointly request the Court to compensate them for the unnecessary extra attorney's fees and expenses incurred by Defendants in an attempt to close the agreed settlement. Finally, Defendants jointly request the Court to enter an order compelling the Plaintiff to deliver an executed and acknowledged version of the release in the form agreed to by opposing counsel by a date certain together with the form of the Final Judgment concluding this matter previously agreed to by the Parties.

## CONCLUSION

For the foregoing reasons, it is respectfully submitted that Defendant's Motion to Enforce the Settlement is well taken and should be granted.

Respectfully submitted, this the 6th day of March, 2017.

**HEALTH CARE FINANCIAL SERVICES, LLC, MISSISSIPPI BAPTIST HEALTH SYSTEM, INC. and HORIZON BILLING SERVICES**

**PAGE, MANNINO, PERESICH & McDERMOTT, P.L.L.C.**

BY:   */s/ William V. Westbrook, III*
**WILLIAM V. WESTBROOK, III, MSB #7119**
Page, Mannino, Peresich & McDermott, P.L.L.C.
2408 14th Street
Gulfport, MS 39501-2019
Telephone: 228-868-8999
Facsimile: 228-868-8940
cwestbrook@pmp.org

5

**CERTIFICATE OF SERVICE**

I hereby certify that on this day I electronically filed the foregoing ***Defendants' Memorandum in Support of Motion to Enforce Settlement*** with the Clerk of the Court using the ECF Filing system which sent notification to the following:

Joshua M. Coe, Esq.
AKERS LAW GROUP, PLLC
P.O. Box 280
Brandon, MS 39208
Joshua.coe@akerslawgroup.com

Michael A. Heilman, Esq.
HEILMAN LAWGROUP, P.A.
4266 I-55 North, Suite 106
Jackson, Mississippi 39211
mheilman@heilmanlawgroup.com

*Counsel for Plaintiff*

So certified this the 6th day of March, 2017.

/s/ William V. Westbrook, III
WILLIAM V. WESTBROOK, III